ROBINSON v. ROBINSON.

Opinion delivered December 6, 1915.

1. INSURANCE—CHANGE OF BENEFICIARY.—The change of beneficiary in a benefit certificate, can not be made by the insured unless by a substantial compliance with the by-laws and regulations of the society.

2. BENEFIT INSURANCE—CHANGE OF BENEFICIARY—ATTEMPT BY INSURED.—Where a member of a beneficial insurance society, has pursued the course pointed out by the by-laws of the society and has done all in his power to change the beneficiary of his certificate, and

nothing remains to be done except some formality on the part of the company, a court of equity will decree that the change has been made in the application of the maxim that equity regards as done that which ought to be done.

3.  BENEFIT INSURANCE—BY-LAWS—CONSTRUCTION.—The language of the by-laws of a benefit society should be liberally construed for the purpose of carrying out their manifest intentions, and when the holder undertakes to make a change of beneficiary in his certificate, and does all that the by-laws require him to do, the rights of the new beneficiary will not be made to depend, in the absence of controlling language, on formalities by the officers of the company or purely ministerial acts.

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*W. C. Rodgers,* for appellant.

The insurance contract at issue is necessarily governed by the by-laws of the order, which are a part thereof as effectively as any other part.    52 Ark. 202, 206; 55 Ark. 210, 212; 80 Ark. 419, 421; 81 Ark. 512, 514; 105 Ark. 140, 143; 24 Fed. 97; 110 Iowa, 642; 171 N. Y. 616; 89 Mo. App. 621; 34 Mont. 357; 33 Fed. 11.

The manner of changing the beneficiary is not a matter of absolute right with the assured, but this can be done only in the manner authorized by the laws of the order.    Only one method of change is authorized or sanctioned and this, in the nature of things, is mandatory. 94 Pac. 133; 16 Col. 203; 112 Wis. 587; 42 Hun, 212, 214; 131 N. Y. 205.

A waiver of the requirements for change of beneficiary must take place, if at all, before the death of assured.    34 Mont. 357; 131 N. Y. 205.

The assured can not effect a change even by an honest attempt which does not conform to the requirements. 130 N. Y. 191; 131 N. Y. 205.    All the requisites of a change must be complied with, not a part, merely.    131 N. Y. 205.

The order does not waive compliance with its by-laws by interpleading the contesting claimants and paying the money into court.    53 Ark. 255, 262; 151 Wis.

156; 112 Wis. 587; 42 Hun, 212, 214; 176 Mass. 468; 61 N. H. 137, 139; 33 Fed. 11.

There can be no change of beneficiary unless authorized by the by-laws. 55 Ark. 210, 213. This necessarily implies that the by-laws must be complied with in order to effect a change.

Neither the insurance certificate nor the proceeds thereof are any part of the estate of the assured. 94 Pac. 132; 37 Kan. 93; 70 Kan. 119.

It is expressly held that neither at law nor in equity can any change be recognized which is not in conformity to the by-laws prescribing the manner of substitution. 89 Mo. App. 621; 140 Mo. App. 45; 110 Iowa, 642.

This is especially true since the assured must be held to have assented to the by-laws in accepting the policy, and, this being true, those claiming by virtue of the contract can not say that they are not required to comply with its by-laws.

To permit the contract to be changed by the claimants of this fund is to make a contract to which the original parties never agreed. This the courts have no right or power to do. 65 Ark. 295, 298; 79 Ark. 456, 460; 61 Ark. 312, 315; 82 Ark. 9, 11; 72 Ark. 484, 490; 83 Ark. 306, 314; 76 Ark. 578, 582; 90 Ark. 88, 93.

Every part of a contract is as sacred and effective as any other part. The by-laws say the change of beneficiary can only be made by notice to the grand keeper of records and seal *and* the issuance of a new policy to the new beneficiary. The agreed statement of facts shows that no such notice was given and that no new policy was issued. This is the only method of change authorized by the laws of the order, which are a part of the contract, and the courts have no right to authorize any other method.

*Etter & Monroe,* for appellee.

From the agreed statement of facts it is plain that the assured did all that was in his power to show his intention and to change the beneficiary, and no one complains except the appellant. Only the order of which the

assured was a member would have the right to complain of any irregularity in the change of beneficiary. 174 S. W. 1199; 173 S. W. 856.

Appellant had no vested interest in the policy, and could not question the method by which the change was made. Her only interest, if interested at all, was as to whether or not a change was actually made. 96 Ark. 156; 97 Ark. 50.

After her divorcement from the assured, appellant no longer came within the class to be benefited by the policy. Her interest was terminated by the divorce. 35 Tex. Civ. App. 373, 80 S. W. 411; 18 Abb. (N. C.) 325; 66 L. R. A. 164; 3 L. R. A. (N. S.) 478; 145 Mass. 134; 13 N. E. 360; 55 Mo. App. 186; 75 Tex. 324; 7 L. R. A. 189; 12 S. W. 626; 37 S. W. 377; 39 L. R. A. (N. S.) 370, note.

HART, J. The right of ownership to the proceeds of a $300 benefit certificate, issued by a mutual benefit society, forms the subject-matter of this litigation.

The mutual benefit society in question filed a bill of interplea in the chancery court. It alleged that it was a fraternal benefit association, organized under the laws of this State; that during the course of its business it issued on the 20th day of March, 1905, a benefit certificate to David Robinson in the sum of $300; that on the 6th day of June, 1913, Robinson died while a member of Mountain View Lodge No. 191, located at Saratoga, Arkansas; that this was a subordinate lodge; that since the death of David Robinson, Rose Robinson, his divorced wife, and H. C. Robinson, his brother and his two sisters have each presented a claim to the amount of the benefit certificate, each claiming to be the beneficiary under said policy. The insurance association admits its liability and states that it is ready to pay the amount of the certificate to any one who may be lawfully entitled thereto. The two sets of claimants above named have filed interventions to the bill of interplea, each claiming to be the beneficiary under the policy. The facts are agreed upon and are substantially as follows:

The policy in question was issued on the 20th day of March, 1905, by the Knights of Pythias of North Amer-

ica, etc., upon the life of David Robinson. David Robinson became a knight of the local lodge above named, and was a member in good standing at the time of his death. On the 19th day of January, 1912, David Robinson appeared in open lodge and announced that he and his wife, Rose Robinson, had separated and informed the lodge that he desired to change the beneficiary in his policy from Rose Robinson to his brother, H. C. Robinson, and sisters, R. A. Arnold and A. P. Hopkins. David Robinson wrote said statement on a slip of paper and placed the same with the policy in question, and this statement was duly incorporated into the minutes of the meeting of said lodge.

The by-laws provide that the amount of the certificate shall be paid out of the endowment fund, the sum of $300 to be paid to the beneficiary named on the face of the policy, who shall be the wife, children, or blood relatives of the deceased knight. Another section of the by-laws provides that any member of the order has authority to change the beneficiary or beneficiaries named in his policy at any time, whereupon all interest of the first named beneficiary or beneficiaries shall cease. The section further provides that no change shall take effect or be in force until the new beneficiaries' names have been furnished the grand keeper of records and seal and a new policy issued in lieu of the old one. The grand keeper of records and seal was a member of the supreme lodge, which was the governing body. It is admitted that the new beneficiaries' names were not furnished to him and that no new policy was issued. The by-laws provide for the formation of subordinate lodges which are under the control of the supreme lodge, which is the governing body. The officer at the head of the subordinate lodge is called the chancellor commander. It is his duty to collect all of the monthly dues and assessments made upon the members of the subordinate lodge and to report the death of any member to the grand lodge. It is his duty to make the reports from the subordinate lodge to the grand lodge and to report the payment of all dues

from the subordinate lodge to the governing body or grand lodge.

Prior to his death, David Robinson secured a divorce from his wife, Rose Robinson, who was named as beneficiary in the policy when issued.

The chancellor found that the brother and sisters were entitled to the amount of the benefit certificate, and Rose Robinson, the divorced wife of the insured, has duly prosecuted an appeal to this court.

It will be noted that the by-laws provide that the amount due under the policy shall be paid to the beneficiary named on the face of the policy, who shall be the wife, children or blood relatives of the deceased knight. Therefore, it is the contention of the brother and sisters on the one hand, that the wife lost her rights under the policy when her husband secured a divorce from her. They insist that the divorce operated to revoke the designation of Rose Robinson as the beneficiary in the certificate. On the other hand, it is the contention of Rose Robinson that she was named as beneficiary when the policy was issued and that the beneficiary was never changed in the policy. She insists that the chancellor should have upheld her rights to collect the insurance on the death of the insured, although she was a divorced wife.

We do not deem it necessary to decide this question. The benefit association is not here as an aggressive litigant insisting upon a strict compliance with its by-laws before it could be compelled to pay out money. The association concedes its liability and offers the money to whoever may be entitled to it. It filed a bill of interplea and deposited the money in the registry of the court to be paid to the party whom the chancellor should find entitled thereto.

(1) The cause being in equity for the purpose of determining the rights between the two sets of claimants, the proceedings must be governed by equitable principles. Hence, it is unnecessary to discuss or determine what the rule at law is or should be. The established rule and the one adopted in this State is that the change of the

beneficiary can not be made by the insured unless there is substantial compliance with the by-laws and regulations of the society. *Carruth* v. *Clawson,* 97 Ark. 50; *Sovereign Camp Woodmen of the World* v. *Israel,* 117 Ark. 121.

(2) Courts of equity have recognized certain exceptions to this general principle, and we think the facts in this case bring it within one of these exceptions. Here, the power of the member to make the change of the beneficiary was absolute under the by-laws and if the member exercised this power as fully as he could exercise it, a court of equity would decree that the change had been made, although there remained some formal act to be performed by the officers of the company. This is an application of the maxim that equity will decree that to be done which ought to be done and will act as though the new certificate had been issued. Where the insured complies with all of the requirements and rules for the purpose of making substitution of beneficiaries, with which he has power to comply, he has done all that he can and all that a court of equity demands. The certificate is not the right itself, but merely evidence of the right. In the case before us, the insured appeared in the subordinate lodge of which he was a member and stated to the officers thereof that he had separated from his wife and that he desired to change his beneficiary from her to his brother and sisters. He gave to the lodge the names of his brother and sisters, and the whole proceeding was incorporated in the minutes of the lodge meeting. It is insisted now that the change of beneficiaries was not made, because the by-laws provide that no change shall take effect or be in force until the new beneficiaries' names have been furnished the grand keeper of records and seal and a new policy issued in lieu of the old one. We do not agree with counsel on this contention. As we have already seen, the insured did all that he was required to do by the by-laws in order to obtain a change of beneficiary. After requesting the officers to make the change, until the time of his death, he was a member in good standing. The lodge recognizes its liability to the

proper beneficiary and is not an active party to this suit. There remains nothing to be done, except the formal act of making the change by the grand keeper of records and seal. He was a member of the supreme lodge or governing body. The subordinate lodges were under the control of the supreme lodge. It can in no sense be said that it was the duty of the insured to send in his application for the change of the beneficiary to the grand keeper of records and seal. The chancellor commander was the highest officer of each subordinate lodge. The by-laws made it his duty to collect and send in the monthly dues and assessments of the members of his lodge to the officers of the supreme lodge. It was also his duty to see that the subordinate lodge paid its dues to the supreme lodge. It was his duty to report the death of any member and to furnish proof of death to the supreme lodge. These acts required to be done or performed by the chancellor commander for the supreme lodge are in their very nature acts of agency and it results from necessary implication that it was the duty of the chancellor commander to furnish the names of new beneficiaries to the grand keeper of records and seal.

As we have already seen, the right of a member to make the change is, under the by-laws, absolute, and the beneficiary has no voice in the matter. Manifestly, however, such a transaction requires some formalities for the protection of the company, the member and the beneficiary, and these formalities must be substantially complied with before the change of beneficiary becomes effective. As we have already stated, however, where a member has pursued the course pointed out by the by-laws of the society and has done all in his power to change the beneficiary, and nothing remains to be done except some formality on the part of the company, a court of equity will decree that the change has been made, in the application of the maxim that equity regards as done that which ought to be done.

(3) The language of the by-laws of the association should be liberally construed for the purpose of carrying out their manifest intentions, and the rights of the new

beneficiaries should not be made to depend, in the absence of controlling language, on formalities by the officers of the company or purely ministerial acts. This principle was recognized by us in the case of *Sovereign Camp W. O. W.* v. *Israel, supra;* and the rule is said to be a well established proposition of law in a case note to *Ancient Order of Gleaners* v. *Byron Bury and Caroline Bury, et al.,* 34 L. R. A. (N. S.) 277; and many cases are cited in support of the rule.

It follows that the decree will be affirmed.