(October 31, 1921.)

## DAVID B. ALLISON, Respondent, v. THE BROTHERHOOD OF RAILROAD TRAINMEN, Defendant, and HANNAH ALLISON, Intervenor and Appellant.

[201 Pac. 838.]

BENEFIT INSURANCE—CHANGE OF BENEFICIARY—HOW EFFECTED—WHEN RIGHTS OF BENEFICIARY VEST — WAIVER — WHEN RIGHT TERMINATES.

1.   Where a certificate of membership is issued by a fraternal beneficial order, the constitution and general rules of the order become a part of the agreement, and a member cannot change the beneficiary except by a substantial compliance with the terms of such agreement.

2.   Where the provisions of a fraternal benefit certificate provide that all transfers of the beneficiary shall be made upon the books of the grand lodge, under the direction of the general secretary and treasurer, and all transfers made in any other manner shall be null and void, the insured cannot change such beneficiary by making a request under oath in writing and mailing the same to the grand lodge, where such request does not reach the office of the general secretary and treasurer until after the death of the insured.

3.   The maxim that equity will regard as done that which ought to have been done has no application to the change of a beneficiary in a certificate, where it would in effect be making for the parties a contract materially different from that which they had made for themselves.

4.   Where the insured in a beneficiary certificate attempts to change the beneficiary, but dies before such change is effected, the rights of the original beneficiary immediately vest upon the death of the insured, and the insurer cannot after the death of the insured waive any of the terms of the agreement to the prejudice of the beneficiary.

Publisher's Note.

1.   Change of beneficiary in mutual benefit association, see notes in 19 Am. St. 786; 52 Am. St. 559; Ann. Cas. 1914D, 1126; 1 A. L. R. 971.

4.   On effect of death of insured before contemplated change of beneficiary is complete, see notes in 34 L. R. A., N. S., 277 and L. R. A. 1915A, 580.

APPEAL from the District Court of the Fourth Judicial District, for Minidoka County. Hon. Wm. A. Babcock, Judge.

Action by David B. Allison to recover on a beneficiary certificate issued by defendant Brotherhood of Railroad Trainmen. From judgment for plaintiff, intervenor Hannah Allison appeals. *Reversed* and *remanded,* with instructions for new trial.

P. C. O'Malley and Homer C. Mills, for Appellant.

The certificate herein, the articles of association, the constitution and laws thereof, the application for membership, and the medical examination, signed by the insured, and all amendments to the laws of the society, constituted the contract between the insured and the society. (Bacon, Beneficial Societies, sec. 226; *Kemper v. Modern Woodmen of America,* 70 Kan. 119, 78 Pac. 452; *Ancient Order Gleaners v. Bury,* 165 Mich. 1, 130 N. W. 191, 34 L. R. A., N. S., 277; *Finnell v. Franklin,* 55 Colo. 156, 134 Pac. 123.)

Upon the death of the insured the proceeds became vested in the appellant. (*Modern Woodmen of America v. Headle,* 88 Vt. 87, 90 Atl. 893, L. R. A. 1915A, 580; *Supreme Lodge v. Price,* 27 Cal. App. 607, 150 Pac. 803.)

After death of the insured and the proceeds became vested in the appellant, the society, by interpleading and paying the money into court, could not waive noncompliance with the provisions of the contract between it and the insured. (*Wendt v. Legion of Honor,* 72 Iowa, 682, 34 N. W. 470; *Ballou v. Gile,* 50 Wis. 614, 7 N. W. 561; Niblack on Acc. Ins. & Ben. Societies, sec. 222; *Fink v. Kink,* 171 N. Y. 616, 64 N. E. 506.)

In order to effect a change of beneficiary in a mutual benefit society there must be a substantial compliance with the constitution and general rules of the society. (*Rollins v. McHatton,* 16 Colo. 203, 25 Am. St. 260, 27 Pac. 254; *Knights of Maccabees v. Sackett,* 34 Mont. 357, 115 Am. St.

532, 86 Pac. 423; *Modern Woodmen of America v. Tarry,* 54 Okl. 308, 153 Pac. 1124; *Independent Order of Foresters v. Keliher,* 36 Or. 501, 78 Am. St. 785, 59 Pac. 324, 1109; 60 Pac. 563; *Titsworth v. Titsworth,* 40 Kan. 571, 20 Pac. 213; *Stringham v. Dillon,* 42 Or. 63, 69 Pac. 1020; *McLaughlin v. McLaughlin,* 104 Cal. 171, 43 Am. St. 83, 37 Pac. 865; *Picher v. Puckett,* 77 Kan. 284, 94 Pac. 132, 17 L. R. A., N. S., 1083; *Freund v. Freund,* 218 Ill. 189, 109 Am. St. 283, 75 N. E. 925; *Luhrs v. Luhrs,* 123 N. Y. 367, 20 Am. St. 754, 25 N. E. 388, 9 L. R. A. 534; *Shuman v. Ancient Order U. W.,* 110 Iowa 642, 82 N. W. 331; *Wilkes v. Hicks,* 124 Ark. 192, 186 S. W. 830; *Flowers v. Sovereign Camp W. O. W.,* 40 Tex. Civ. App. 593, 90 S. W. 526; *Sovereign Camp v. Israel,* 117 Ark. 121, 173 S. W. 855; *Hamilton v. Royal Arcanum,* 189 Pa. St. 273, 42 Atl. 186; *Barboza v. Conselho Supremo,* 43 Cal. App. 775, 185 Pac. 1028; Bacon on Beneficial Societies, secs. 404–411; 14 R. C. L. 1390.)

Execution of affidavit merely disclosed intention of insured to cause change to be made, and before a change could be effected, such instrument should have been presented to and received by the society at Cleveland prior to the death of the insured. (*Supreme Lodge v. Price,* 27 Cal. App. 607, 150 Pac. 803; *Stemler v. Stemler,* 31 S. D. 595, 141 N. W. 780; *Flowers v. W. O. W., supra; Sovereign Camp etc. v. Israel, supra.*)

Dampier & Codding, for Respondent.

Where a member of a benefit association, in attempting a change in the beneficiary of his certificate, has done everything in his power to conform with the rules of the association in that regard, but before all the formalities have been performed, such as the issuing of a new certificate by the association, he dies, a court of equity will decree that to be done which ought to be done and deem the change effected. (*Supreme Lodge O. & G. C. v. Terrell,* 99 Fed. 330; *Berkeley v. Harper,* 3 App. D. C. 308; *Nally*

v. Nally, 74 Ga. 669, 58 Am. Rep. 458; Hirschl v. Clark, 81 Iowa, 200, 47 N. W. 78, 9 L. R. A. 841; Schmidt v. Iowa K. of P. Ins. Assn., 82 Iowa, 304, 47 N. W. 1032, 11 L. R. A. 205; Wood v. Brotherhood A. Y., 148 Iowa, 400, 126 N. W. 949; Heydorf v. Conrack, 7 Kan. App. 202, 52 Pac. 700; Manning v. Ancient Order U. W., 86 Ky. 136, 9 Am. St. 270, 5 S. W. 385; Schoenau v. Grand Lodge A. O. U. W., 85 Minn. 349, 88 N. W. 999; St. Louis Police Relief Assn. v. Strode, 103 Mo. App. 694, 77 S. W. 1091; Independent Order of Foresters v. Keliher, 36 Or. 501, 78 Am. St. 785, 59 Pac. 324, 1109, 30 Pac. 563; Donnelly v. Burnham, 86 App. Div. 226, 83 N. Y. Supp. 659; Tolson v. National Provident Union, 60 Misc. Rep. 460, 113 N. Y. Supp. 534; Bernheim v. Martin, 45 Wash. 120, 88 Pac. 106; McGowan v. Supreme Court I. O. F., 104 Wis. 173, 80 N. W. 603; Waldum v. Homstad, 119 Wis. 312, 96 N. W. 806; Supreme Conclave etc. v. Cappella, 41 Fed. 1; National American Assn. v. Kirgin, 28 Mo. App. 80; Wandell v. Mystic Toilers, 130 Iowa, 639, 105 N. W. 448; Hall v. Allen, 75 Miss. 175, 65 Am. St. 601, 22 So. 4; Luhrs v. Luhrs, 123 N. Y. 367, 20 Am. St. 754, 25 N. E. 388, 9. L. R. A. 534; Supreme Council v. Behrend, 247 U. S. 394, 1 A. L. R. 966, 38 Sup. Ct. 522, 62 L. ed. 1182.)

The fact that the attempted transfer did not reach the brotherhood until two days after the death of the insured is not material. (State Mutual Assur. Co. v. Bessett, 41 R. I. 54, 102 Atl. 727, L. R. A. 1918C, 961.)

The transfer of the insurance upon the books of the company and the issuance of a new certificate, being merely ministerial acts, if not done, do not in any way affect the right of the plaintiff to the insurance covered by the policy. (John Hancock Mutual Life Ins. Co. v. Bedford, 36 R. I. 116, 89 Atl. 154.)

LEE, J.—This action was commenced by respondent David B. Allison to recover upon a beneficiary certificate issued by the Grand Lodge of the Brotherhood of Railroad Trainmen

upon the life of his son, Thomas B. Allison. The more important facts are stipulated in the record, and from the record it appears that the respondent was the first beneficiary named in this certificate, which was issued to the assured in November, 1905, and that subsequently, appellant and insured having intermarried, he transferred the certificate to her, in accordance with the constitution and general rules of the Brotherhood. The assured died on October 18, 1917, as the result of an injury received on September 25th preceding, and left surviving him his said wife and their two children, Mary, aged eight, and Patrick,, aged six years. An estrangement had existed between deceased and his wife since July preceding, when upon their return journey from the state of Washington they separated at Avery, Idaho, the husband remaining there and the wife continuing her journey to Pocatello, where her parents resided, she taking with her a trunk which her husband had checked on their transportation, which contained this certificate in question, along with other of their personal effects. This husband and wife appear never to have met again after their parting at Avery; the wife later returned to Seattle, where she was employed at the time of her husband's death, and he appears to have continued in the employment of the railroad until about the 25th of September, when he received the injury which resulted in his death. The wife in the meantime had commenced divorce proceedings in the superior court of the state of Washington. Immediately after said injury, assured was taken to the general hospital in Pocatello, where he remained for some time, and appeared to improve to such an extent that his recovery seemed probable. On October 9th he was taken to his father's home near Rupert, where he remained until he died, on October 18th, not having met or directly heard from his wife, and their domestic difficulties never having been reconciled. The wife had been informed that her husband was ill, but not as to the cause of the illness, until after his death and burial, when she returned to Pocatello and secured possession of

the certificate in question, which had remained in the trunk at her father's home in Pocatello, where it had been left by her in July preceding.

From communications in writing addressed to his wife or intended for her, made by the assured shortly prior to receiving the injury, and also from statements made to Sheriff Blake, who was called soon after the occurrence, it appears that he intended and desired to leave this insurance to his wife, expressing for her great affection, and admitting that he had not always treated her properly during their married life.

Later, however, and while still at the hospital, and apparently believing that he would fully recover, he stated to George W. Hunt, the secretary of the local lodge of the Brotherhood, that there had been trouble between himself and his wife, and expressed a wish to change the beneficiary from her to his father, and requested the secretary's assistance in so doing. He was advised by the secretary what proceedings were necessary to be taken, and that he, the secretary, would assist in making the change. No further steps were taken toward changing the beneficiary until he returned to his father's home, when H. B. Redford, an attorney of Rupert, at the request of respondent prepared an affidavit and letter and took the same to the assured, who was then confined to his bed at his father's home about two miles from Rupert, when the assured signed and swore to the affidavit before the attorney as a notary.

Omitting the caption, the affidavit is as follows:

"Thomas Benjamin Allison, being first duly sworn, deposes and says: that he is insured in the Brotherhood of Railroad Trainmen in the sum of $1600.00; that the beneficiary under said policy is his wife Hannah Allison; that said policy is to the best of affiant's knowledge and belief now in the possession of his said wife and that her whereabouts are to this affiant now unknown; that affiant is unable to get possession of said insurance policy and that

said beneficiary refuses to return the same to affiant; that David B. Allison, whose residence is Rupert, Idaho, is the father of affiant; that it is the intention and desire and request of said affiant that the General Secretary and Treasurer of the said Brotherhood of Railroad Trainmen change the beneficiary in said policy from affiant's wife Hannah Allison to affiant's father, David B. Allison, in accordance with the rules and regulations of said Brotherhood. Affiant further requests that a new certificate be issued in accordance herewith, and upon such issuance he hereby releases said Brotherhood from any further liability under the old certificate. Affiant further says that his present address is Rupert, Idaho.

                    "THOMAS BENJAMIN ALLISON.

"Subscribed and sworn to before me this 13th day of October, 1917.

                              "H. B. REDFORD,
                                "Notary Public."

The mother of the assured mailed this affidavit to the secretary of the Brotherhood at Cleveland, Ohio, some time after its execution, but it did not reach the secretary's office until October 20th, or two days after the death of the assured, and after the secretary had been notified of the death by the respondent David B. Allison, named as beneficiary in said affidavit, who claimed to be the rightful beneficiary by virtue of the making and mailing of this affidavit, and who demanded the insurance upon this certificate from the Brotherhood, having made satisfactory proof of death. The wife also made demand upon said Brotherhood for the amount of this certificate, basing her claim upon being named as the beneficiary in said certificate, and also submitting satisfactory death proofs and surrendering the certificate to the head office of the order.

Respondent commenced this action in March, 1918, and the Brotherhood admitted its liability, but claimed that it was unable to determine who was entitled to this money, and paid the net amount of $1,520.90 due on this certifi-

cate into court, and upon doing so was released from further liability thereon. The court then entered an order that appellant should appear after the service of a copy of such order upon her, and of the complaint and summons, and that unless she did so appear and set up her claim to the fund, it should be paid to respondent, and she appeared and filed in said action a complaint and answer in intervention, whereby she claimed to be entitled to the proceeds of said certificate by virtue of being the beneficiary therein.

The agreed statement of facts brings into the record a photographic copy of the certificate, the affidavit above set forth, which attempted to change the beneficiary, and certain letters, telegrams and other record evidence pertaining to the issues involved, including the constitution and general rules of the Brotherhood of Railroad Trainmen, in so far as they are material or relevant to the issues presented by the pleadings.

Respondent bases his claim for recovery upon sec. 60 of the constitution and general rules, entitled "Beneficiary Certificates," and particularly that part reading as follows:

" . . . . In case a beneficiary certificate has been lost or destroyed, or the member to whom it has been issued cannot obtain possession thereof, a new beneficiary certificate may be issued by the General Secretary and Treasurer on presentation of an affidavit from the member fully setting forth the loss or destruction of the certificate issued to him, or his inability to obtain possession of the same, and releasing and discharging the Brotherhood from any and all liability thereunder."

Appellant contends that the foregoing provisions must be construed in connection with the preceding paragraph of the same section, which reads: "Every such certificate must be accepted in writing on the face thereof, over the signature of the member insured thereby, to be attested by the secretary of the subordinate lodge, under the lodge seal." And sec. 62, entitled "Transfer of Beneficiary Cer-

tificates,'' which is as follows: ''All transfers of bene-
ficiary certificates shall be made upon the books of the
Grand Lodge, under the direction of the General Secretary
and Treasurer, and all transfers made in any other manner
shall be null and void. Any member desiring to transfer
his beneficiary certificate shall fill out the printed transfer
on the certificate and sign his name thereto, and send the
same to the General Secretary and Treasurer, through the
secretary of the lodge of the Brotherhood. It shall be the
duty of the General Secretary and Treasurer, immediately
upon its receipt, to certify to such transfer in the form
therefor provided in the certificate, and until so certified
by the General Secretary and Treasurer the transfer will
not be complete.''

A trial of the cause was had before the court, with a jury,
and a verdict was returned in favor of respondent David
B. Allison, from which verdict and judgment thereon ap-
pellant, widow of deceased, prosecutes this appeal, and
assigns some thirty or more errors as grounds for reversal
of the judgment, the more important of which are: Errors
based upon the court's refusal to nonsuit plaintiff; that
the evidence is insufficient to support the verdict and judg-
ment; errors in giving instructions relating to the effect of
the affidavit made by the deceased in his attempt to change
the beneficiary in such certificate from his wife to his
father; instructions relating to the construction to be given
to certain parts of the constitution and general rules of the
Brotherhood; instructions relating to the competency or
lack of competency of the assured to change his bene-
ficiary at the time of the making of said affidavit; and in
the court's refusal to give several instructions requested
by appellant. The record is not sufficiently definite and
certain as to what requests were given and what refused,
nor are any of the instructions identified or referred to
otherwise than by folios.

In addition to the agreed statement of facts, the re-
porter's transcript contains some 250 pages of evidence taken

at the trial, but in our view of the law applicable to this case, it will not be necessary to review the testimony of the several witnesses, because all of the facts essential to a determination of the questions here presented may be found in the agreed statement of facts. Nor will it be necessary to consider each assignment in detail, for the right to recover depends upon the construction to be given to the foregoing provisions of the constitution and general rules of the Brotherhood, relating to the manner in which the assured may change his beneficiary under the terms and conditions of his contract.

A change or attempted change of a beneficiary in a fraternal life insurance certificate, where the insured has died before all of the conditions prescribed by the agreement have been fully complied with, has perhaps more often given rise to legal controversies than any other class of questions pertaining to these contracts. In this case, counsel have with great diligence collected and cited so many authorities in support of their respective contentions that it is not possible within the limits of this opinion to review all of them. Respondent contends that the foregoing affidavit, executed by the assured shortly before his death, evidences such a fixed purpose to change the beneficiary in the certificate from his wife to his father that following the fundamental principle that equity will regard that as done which ought to have been done, it must be held in this case that the assured did in fact effect a change in his beneficiary, notwithstanding his affidavit requesting a change did not reach the general offices of the Brotherhood at Cleveland, Ohio, until after his death. The learned trial judge adopted this view and applied this rule, and instructed the jury to this effect. The principle contended for, that equity will treat that as done which ought to have been done, is sound in reason and supported by such weight of authority that its correctness cannot be regarded as a debatable question. The difficulty does not arise regarding the correctness of the general prin-

ciple, but with regard to its application in the manner contended for by the respondent to the admitted facts of this case, for it is equally as fundamental that this principle cannot be extended or applied to facts or conditions where it would in effect be making for the parties a contract essentially different from that which they themselves have made.

It seems clear that the provisions of sec. 60 of the Brotherhood's constitution first above quoted were primarily intended to provide a method for procuring a new certificate where the one previously issued had been lost or destroyed, or where the member to whom it had been issued could not obtain possession of the same, without such person being required to undergo a new medical examination or other requirement relating to his being a proper risk. As to whether or not it was intended by this provision that in addition to obtaining a new certificate, the insured might at the same time have a new beneficiary named therein, upon the request being presented to the general secretary and treasurer during the lifetime of the insured, it is not necessary for us to determine, for the reason that the request in this case did not reach the secretary until two days after the death of the insured. Under the provisions of this section, and also under the proviso contained in sec. 62 relative to a change of beneficiary, the secretary was at the time of receiving this affidavit, he having previously received notice of the death of the insured, without authority to issue a new certificate.

We do not wish to be understood as holding that a change of beneficiary could not be made without a literal compliance with all of the requirements of this certificate and the constitution and general rules of the Brotherhood, which form a part of the contract. But we do think that part of sec. 60 above quoted, relating to the method of securing a new certificate, must be construed in connection with the other provisions of that section, and also sec. 62, and we hold that a change of beneficiary cannot be made by the insured

placing in the mails a request in the form of an affidavit that the original certificate is lost, destroyed or beyond his control, and directing the Brotherhood to issue a certificate with a new beneficiary in lieu of the old one, particularly when he qualifies such request with the proviso that "upon such issuance he hereby releases said Brotherhood from further liability under the old certificate," and it appears that he died before the request reached the insurer.

Fraternal orders of this character have found that it is essential for their protection and the protection of their members to attach reasonable rules and regulations to the method of changing the beneficiary in these certificates. It is a matter of common knowledge that much of the business of these orders must be transacted through local officials, whose selection and method of doing business is only to a limited extent under the control of the head officers. These associations may waive the prescribed manner of effecting a change of beneficiary, and after such waiver persons interposing conflicting claims to the benefit fund may not complain because of a noncompliance with the rules and regulations of the order in making the change. While it may be true that the Brotherhood in this case is not making any claim on behalf of either of the parties, it comes into court and admits that it owes this money to the rightful beneficiary, and asks the court to determine who is the rightful beneficiary under this certificate. It cannot waive any right of the beneficiary, after the death of the insured, to the prejudice of such beneficiary, as such right becomes vested upon the death of the insured. If the certificate members in these orders could change these certificates at will, and particularly with regard to beneficiaries, without any restrictions or concurrent action on the part of the lodge officers, it would result in the order being frequently, as it is in this case, subjected to the conflicting demands of various persons, each claiming to be the lawful beneficiary.

The courts construe liberally the provisions of this class of contracts relating to a change of the beneficiary, and give effect to the intent of the insured to change such beneficiary whenever it can be done without disregarding the plain terms of the agreement. But it is quite generally held that in order to change a beneficiary in a mutual benefit certificate, there must be a substantial compliance with the constitution, rules and regulations of the order. (*Independent Order Foresters v. Keliher,* 36 Or. 501, 78 Am. St. 785, 59 Pac. 324, 1109, 60 Pac. 563; *Pilcher v. Puckett,* 77 Kan. 284, 94 Pac. 132, 17 L. R. A., N. S., 1083; *Knights of Maccabees v. Sackett,* 34 Mont. 357, 115 Am. St. 532, 86 Pac. 423; *Finnell v. Franklin,* 55 Colo. 156, 134 Pac. 122; *Supreme Lodge etc. v. Price et al.,* 27 Cal. App. 607, 150 Pac. 803; *Sovereign Camp v. Israel,* 117 Ark. 121, 173 S. W. 855; *Wilkes v. Hicks,* 124 Ark. 192, 186 S. W. 830; and *Modern Woodmen of America v. Headle,* 88 Vt. 87, 90 Atl. 893, L. R. A. 1915A, 580, and note.)

In *Shuman v. Ancient Order etc.,* 110 Iowa, 642, 82 N. W. 331, very similar in its facts to case at bar, the insured had been in possession of the certificate for many years, and on the day before his death indorsed on the back of the certificate a revocation of payment to his wife, the beneficiary named therein, and directed payment to be made to his nephew. The certificate with the indorsement thereon was mailed to the grand lodge the same day that the insured died, but no new certificate was issued. Its constitution, which was held to be a part of the contract, gave the insured a right to change the beneficiary, but explicitly pointed out the manner in which the change should be made, and it was held that this was the method he had agreed to, and that he had no absolute legal right to effect a change of beneficiary in any other manner.

In *Stemler v. Stemler,* 31 S. D. 595, 141 N. W. 780, it is held that where a fraternal beneficiary certificate provides that no change of beneficiary shall be effective until the old certificate is delivered to the head clerk and a new certificate is issued, during the lifetime of the member, and

that until this is done the old certificate remains in force, such condition must be substantially complied with before there is a change of beneficiary, and where a member executed the surrender clause, designating the desired change of beneficiary, but did not deliver the old certificate to the head clerk, who issued a new certificate immediately after the member's death, there was no change of beneficiary, and the rights of a beneficiary in the original certificate and the rights of a beneficiary in a new certificate depend, as between themselves, on the contract between the member and the association at the time of the member's death. At the time of the insured's death the right of the beneficiary in the original certificate becomes vested, and the association cannot by any waiver affect this vested right.

So in *Freund v. Freund*, 218 Ill. 189, 109 Am. St. 283, 75 N. E. 925, it is held that where a policy of life insurance provides that a change of beneficiary shall be made by an indorsement in writing, and shall not take effect until indorsed on the policy by the home office, no act of the insured can effect such a change in the absence of such indorsement; and this is true although the person whose life is insured adopts and signs printed forms prepared by the association, making known his intention to change the name of the beneficiary, and receives a receipt from the local officer of the association, stating that the papers have been received for transmission to the home office, still if the association does not in the lifetime of the insured indorse the requested consent, as required by the terms of the policy, no change of beneficiary is accomplished.

In case at bar, the court instructed the jury that under the undisputed facts the insured, Thomas B. Allison, had done all that was required of him under the rules and regulations of the Brotherhood to change the beneficiary, and in that we think there was reversible error. This instruction in effect directs the jury to find for the respondent unless they find that at the time the insured made the affidavit he was of unsound mind, or had been subjected to undue influence on the part of the respondent or

his wife. As we have already observed, none of the provisions relating to a change of beneficiary, as required by said sec. 62, had been complied with, and while the witness George W. Hunt, secretary of the local lodge of the Brotherhood at Pocatello, testified that he had known of beneficiaries being changed by affidavits similar to that made by the deceased in this case, it is not shown that this practice was so common as to amount to immemorial custom, and it cannot be held to modify the provisions of secs. 60 and 62 above referred to.

Counsel for respondent places great reliance upon the recent case of *Supreme Council v. Behrend,* 247 U. S. 394, 1 A. L. R. 966, 38 Sup. Ct. 522, 62 L. ed. 1182, wherein it is held that in the absence of law or rule of the association to the contrary, the naming of a person as beneficiary in a benefit certificate issued by a fraternal association does not confer a vested right, but an expectancy merely, which may be defeated at any time by act of the insured member; and further, that in order to change a beneficiary, it is not always essential to validate such change that the original certificate be surrendered, providing the association issues a new certificate in lieu of the old during the lifetime of the assured, and with this holding we are in accord. Counsel also relies on the case of *Supreme Conclave etc. v. Cappella,* 41 Fed. 1, wherein it is said: "In making such change of beneficiary, however, the insured is bound to do it in the manner pointed out by the policy and by-laws of the association, and any material variation from this course will invalidate the transfer. Thus, if the certificate provides that no assignment shall be valid unless approved by the secretary, an assignment without such approval will be invalid."

The court further says that the general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to three exceptions: (1) If the society waives a strict compliance with its own rules, and in pur-

suance of a request of the insured has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued; (2) if it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made; (3) if the assured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is issued he dies, a court of equity will treat such certificate as having been issued. We do not think the facts of this case bring it within any of these exceptions.

Where, as in this case, the insured had under consideration a change of beneficiary for some weeks prior to his death, and had been instructed by the secretary of the local lodge how to make such change, and the contract contains such specific requirements as are found in the rules and regulations of this association, we do not think the execution and mailing of the affidavit herein referred to, which did not reach the general secretary and treasurer until after the death of the insured, is sufficient to change the beneficiary under the admitted facts of this case.

For the reasons herein expressed, the judgment of the court below is reversed and the case remanded for a new trial, in accordance with the views herein set forth. Appellant is awarded costs.

Rice, C. J., and Budge, McCarthy and Dunn, JJ., concur.